**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **MICHAL PRATT HILL ET AL** | **CIVIL ACTION NO. 25-1598** |
| **VERSUS** | **JUDGE EDWARDS** |
| **POLICE JURY OF OUACHITA PARISH ET AL** | **MAG. JUDGE MCCLUSKY** |

## MEMORANDUM RULING AND ORDER

Before the Court is a Motion to Dismiss (R. Doc. 7) filed by Ouachita Parish Sheriff Marc Mashaw ("Sheriff Mashaw"), Warden Chris Jerkins ("Warden Jerkins"), and Deputy Carolyn Russell ("Deputy Russell") (collectively, "Defendants"). Michal Pratt Hill, on behalf of her children Co.C., Car.C., and Cad.C., and Alani Brown, on behalf of her minor child A.C., (collectively, "Plaintiffs") oppose. *See* R. Doc. 10. Defendants replied. *See* R. Doc. 11.

Having carefully considered the parties' memoranda and the applicable law, the Motion is **GRANTED**.

## BACKGROUND[1]

Prior to the events giving rise to this action, Cornelius Cole ("Mr. Cole") was convicted of possession of marijuana, for which he was placed on probation. *See* R. Doc 1 at ¶ 8. While on probation, he was charged with domestic violence. *See id.* Because of this charge, he was incarcerated in the Ouachita Correctional Center

[1] The factual background below comes "from the operative […] complaint because, at this stage, we accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff…." *Nevarez v. Dorris*, 135 F.4th 269, 271 n.1 (5th Cir. 2025) (citation modified).

("OCC") and housed in OCC's B Dorm. *See id.* at ¶¶ 8, 10. On October 24, 2024, a fellow inmate, Jarvis Taylor ("Mr. Taylor"), attacked Mr. Cole with a lock stuffed in a sock, allegedly causing damage to his head and body. *See id.* at ¶ 9. Plaintiffs allege that other inmates—not deputies overseeing B Dorm at OCC—interrupted the attack. *See id.* at ¶ 10. Plaintiffs claim that Deputy Russell and other deputies either monitored the security cameras but failed to act, or negligently failed to monitor them at all. *See id.* at ¶¶ 10–11. That same day, medical personnel at OCC evaluated and medically cleared Mr. Cole. *See id.* at ¶ 12. According to Plaintiffs, Mr. Cole received no further medical care for nearly a month following the October 24th incident. *See id.* Following this, Mr. Cole was housed at "ISO 204"[2] while Mr. Taylor was returned to B Dorm. *See id.* at ¶ 13.

On November 19, 2024, Plaintiffs allege that an unnamed person contacted Lester Jackson ("Mr. Jackson"), Mr. Cole's stepfather. *See id.* at ¶ 14. The unnamed individual allegedly informed Mr. Jackson that Mr. Cole was fading in and out of consciousness while OCC staff were nearby. *See id.* The next day, OCC staff called 911 because, Plaintiffs say, Mr. Cole's behavior changed, and he continued to pass out. *See id.* at ¶ 15. By the time EMS arrived, Mr. Cole was allegedly in cardiac arrest. *See id.* EMS began cardiopulmonary resuscitation and later transported Mr. Cole to the Emergency Department at Ochsner LSU Health-Monroe ("Ochsner"). *See id.* According to Plaintiffs, EMS successfully restored spontaneous circulation. *See id.* However, Mr. Cole later died at Ochsner on November 22, 2024. *See id.* at ¶ 16.

[2] While no party defines "ISO 204," we believe it to mean an isolated unit at OCC.

Plaintiffs claim that Mr. Cole's medical records identify the immediate cause of death as an intracranial bleed, diagnosed as a hemorrhagic stroke. *See id.* at ¶ 17.

On October 24, 2025, Plaintiffs filed the instant civil rights action under 42 U.S.C. § 1983 against the Ouachita Parish Policy Jury, Sheriff Mashaw, Warden Jerkins, and Deputy Russell. *See generally id.* Plaintiffs assert violations of the Eighth and Fourteenth Amendments as well as various state tort laws. *See id.* Defendants now move to dismiss Plaintiffs' Complaint based on their purported failure to plead any claim against these Defendants in either their official or individual capacities. *See* R. Doc. 7 at 1.

## **RULE 12(b)(6) STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "This requirement provides opposing parties 'fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). A court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that

is plausible on its face." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 569). As the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). This plausibility standard calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim; however, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* (citation omitted).

"A court should not dismiss a complaint with properly pled factual allegations, even if it strikes [the court] that actual proof of those alleged facts is improbable." *Bazinet v. Beth Israel Lahey Healthy, Inc.*, 113 F.4th 9, 15 (5th Cir. 2024) (quoting *Twombly*, 550 U.S. at 556) (cleaned up). However, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## <u>QUALIFIED IMMUNITY STANDARD</u>

"Qualified immunity protects government officials from liability for damages when they violate the law, but nonetheless reasonably could have believed that they were acting lawfully." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024). The qualified immunity defense "balances two important interests—the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Defendants are "entitled to qualified immunity at the motion-to-dismiss stage unless … [P]laintiffs have alleged facts sufficient to plausibly show that (1) … [D]efendant[s'] conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Pearson*, 555 U.S. at 232). "Courts may address the prongs 'in either order' and may 'resolve the case on a single prong.'" *Kennedy v. City of Arlington, Texas*, 165 F.4th 937, 943 (5th Cir. 2026) (quoting *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021)).

## ANALYSIS

Before turning to our analysis, we must first resolve a threshold pleading standard dispute. Both parties devote portions of their briefing to the question of whether Plaintiffs' allegations are governed by the *Twombly* and *Iqbal* standards or a heightened pleading standard because of Defendants' invocation of qualified immunity and Plaintiffs' assertion of municipal liability claims. *See* R. Doc. 10 at 6; *see also* R. Doc. 11 at 1–3.

The Fifth Circuit has recognized that "[t]he doctrine of qualified immunity … adds a wrinkle to § 1983 pleadings when qualified immunity is relevant." *Arnold v. Williams*, 979 F.3d 262, 266–67 (5th Cir. 2020). Even so, when qualified immunity is raised at the motion to dismiss stage, a plaintiff's claims remain "subject to the same

Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *See id.* (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)). That said, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (citation and quotations omitted).

The same plausibility standard governs Plaintiff's municipal liability claims. To pass muster at the motion to dismiss stage, a complaint asserting municipal liability "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 284–85 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). With these principles in mind, we proceed with our analysis.

## I. Official Capacity Claims

### A. Warden Jerkins and Deputy Russell

Defendants first argue that Plaintiffs cannot maintain official capacity claims against Warden Jerkins and Deputy Russell because neither are final policymakers for Ouachita Parish Sheriff's Office. *See* R. Doc. 7-1 at 10. We agree.

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent[,]" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted), and may only be brought against an official acting

as a final policymaker in accordance with state law. *See Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citations omitted). "Sheriffs in Louisiana are final policy makers with respect to management of the jail." *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998); *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) (explaining that the Sheriff is the proper defendant in an official capacity suit). And Plaintiffs concede the point. *See* R. Doc. 10 at 4. Accordingly, Plaintiffs' official capacity claims against Warden Jerkins and Deputy Russell are dismissed.

**B. Sheriff Mashaw**

Plaintiffs have sued Sheriff Mashaw in his official capacity, which is construed as a claim against the local governmental entity itself.[3] *See Passerrello v. Sumner,* No. 09-1916, 2013 WL 4590618 at *2 (W.D. La. Aug. 28, 2013) (citing *Glasper v. Guzman*, No. 06-2040, 2009 WL 1507568 at *6 (E.D. La. May 27, 2009)). A governmental entity may be subject to liability pursuant to § 1983 when the entity maintains an unconstitutional policy or custom. *See Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). These claims are often referred to as "*Monell* claims," in reference to the Supreme Court case by that name. *See Monell*, 436 U.S. 658. "[Monell] liability under

---

[3] Plaintiffs also named the Ouachita Parish Police Jury ("OPPJ") as a defendant in this case. *See* R. Doc. 1 at ¶ 7. Despite being served, *see* R. Doc. 3, OPPJ has not answered Plaintiffs' Complaint or otherwise appeared before the Court. Even so, because Plaintiffs have not alleged facts regarding any funding or expenses of OCC, Plaintiffs' allegations are not cognizable against OPPJ. *See Prudhomme v. Russell*, No. 17-1344, 2018 WL 2110684, at *4 (W.D. La. Apr. 19, 2018), *report and recommendation adopted*, No. 17-1344, 2018 WL 2107194 (W.D. La. May 7, 2018) (dismissing complaint for failing to allege facts regarding under-funding against OPPJ); *see also Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir. 2008) ("day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority").

section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

Defendants contend that Plaintiffs have failed to allege an official policy or custom that was the moving force behind Mr. Cole's injuries. *See* R. Doc. 7-1 at 12–19. According to Defendants, Plaintiffs' allegations concern only Deputy Russell's purported failure to perform certain job functions on October 24, 2024, which, standing alone, is not enough. *See id.* at 12. Defendants further claim that Plaintiffs' generic, vague, and conclusory allegations that Sheriff Mashaw failed to adopt adequate policies are likewise insufficient to survive at this stage. *See id.* at 15–16.

Plaintiffs, by contrast, contend that they have pleaded sufficient facts establishing persistent, widespread practices at OCC that deprived Mr. Cole of his constitutional rights. *See* R. Doc. 10 at 2. Specifically, Plaintiffs maintain that the events occurring on October 24, 2024, and thereafter, viewed in the aggregate, support the existence of "a *de facto* policy that dangerous inmates need not be closely monitored." *See id.* at 2–3. Plaintiffs also aver that their Complaint is sufficiently pled, by alleging that Sheriff Mashaw "failed to set forth an adequate policy regarding monitoring for prisoners at OCC in the presence of other, dangerous prisoners." *See id.* at 5; *see also* R. Doc. 1 at ¶ 23. The Complaint alleges that the training was inadequate because it "did not provide for constant observation or other methods of

adequate observation and provided only sporadic or otherwise inadequate observation …." *See* R. Doc. 10 at 5; *see also* R. Doc. 1 at ¶ 23.

The Fifth Circuit recognizes three routes to establish an official policy for municipal liability. First, "[A] policy statement formally announced by an official policy maker." *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010)). Second, a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). Or third, "a single unconstitutional act by a final policymaker." *Id.* (citing *Zarnow*, 614 F.3d at 169).

Importantly, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Pudas v. St. Tammany Par.,* No. 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (alteration in original) (quoting *Colle v. Brazos Cnty.,* 981 F.2d 237, 245 (5th Cir. 1993)). To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' . . . a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Plaintiffs do not assert a written policy statement or a formal directive, nor do they allege a single unconstitutional act by Sheriff Mashaw. Plaintiffs therefore must identify a persistent, widespread practice constituting a custom. *See Bennett v. City*

*of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). And "[t]o proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Thompson v. McGehee*, No. 25-10196, 2026 WL 2069890, at *10 (5th Cir. July 17, 2026) (quoting *Peña*, 879 F.3d at 622) (citation modified). "That means [Plaintiffs] must plausibly allege, in more than conclusory terms, constitutional violations that occurred in cases other than" this one. *See Williams v. Zordan*, No. 21-1061, 2023 WL 6451111, at *13 (W.D. La. Sept. 29, 2023) (citing *Peña*, 879 F.3d at 622).

Here, Plaintiffs' "failure to" claims, *see* R. Doc. 1 at ¶ 19–33, "are conclusory statements devoid of any factual context." *See Williams*, 2023 WL 6451111, at *9. And, at most, Plaintiffs have alleged one incident involving Mr. Cole. They have not adequately alleged that the incident resulted from governmental policy or widespread custom. Courts finding the existence of a governmental custom have generally relied on allegations of specific constitutional violations or facts concerning not only the plaintiffs themselves, but others, indicating that similar violations may have occurred. *Venzor v. Collin County, Texas*, No. 20-318, 2022 WL 666989, at *6 (E.D. Tex. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 656828 (E.D. Tex. Mar. 4, 2022) (citing *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020); *Mathis v. Sw. Corr., LLC*, No. 20-146, 2021 WL 5088276, at *40 (E.D. Tex. June 15, 2021), *report and recommendation adopted*, No. 20-146, 2021 WL 4129123 (E.D. Tex. Sept. 10, 2021); *Carrillo v. Buendia*, No. 20-28, 2020 WL 4584380, at *19 (S.D. Tex. Aug. 10, 2020)). No facts or similar incidents have been alleged here.

"Without specific factual allegations regarding other instances …, [Plaintiffs'] complaint amounts to no more than an isolated incident, which will not trigger [Monell] liability …. Similarly, [Plaintiffs'] vague and conclusional allegation[s] that Sheriff [Mashaw's] failure to [supervise and] train deputies resulted in [Mr. Cole's injuries] does not give rise to § 1983 liability." *Yates v. Unidentified Parties*, 73 F. App'x 19, 20 (5th Cir. 2003) (citing *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Even assuming, *arguendo*, that Plaintiffs' Complaint adequately alleges policies concerning the failure to train, supervise, intervene, classify, monitor, and provide medical care, those "failure-to" claims fail on alternative grounds. Each is addressed in turn.

*1. Failure to Train and Supervise*

To adequately state a failure to train or supervise claim, a plaintiff must allege "(1) that the municipality's training, supervisory, or disciplinary polices or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting this deficient policy, and (3) that the inadequate training, supervisory, or disciplinary policy directly caused the violations in question." *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff*, 948 F.3d at 285). These claims "involve the same basic elements: inadequacy, deliberate indifference, and causation." *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006) (citations omitted).

First, Plaintiffs' failure to train and supervise claims are conclusory. Plaintiffs allege that Deputy Russell, whom they contend had a duty to monitor Mr. Cole and prevent his injuries, was inadequately supervised. *See* R. Doc. 1 at ¶¶ 19–21. But these allegations provide no factual basis from which we can infer inadequate training or supervision and therefore fail to state a plausible claim. *See Sligh v. City of Conroe, Texas*, 87 F.4th 290, 303 (5th Cir. 2023) (affirming dismissal of failure to train claims where the plaintiff relied on entirely conclusory allegations and pleaded no pattern or prior incidents); *see also Martinez v. City of Rosenberg, Texas*, 123 F.4th 285, 289 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2814 (2025) (same); *Williams*, 2023 WL 6451111, at *9 (same).

Plaintiffs' failure to train claims are insufficient for the additional reason that they do not identify how the training was inadequate. Although we do not require a heightened pleading standard at this stage, *see Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 614 (W.D. Tex. 2023), "[d]efects in a particular training program [still] must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Plaintiffs do allege that Defendants' training policy was inadequate because it only provided for sporadic observation as opposed to constant observation. *See* R. Doc. 1 at ¶ 23. But the Complaint "neither alleges specific facts about the training protocols in [place] nor describes any deficiencies in the [training] in light of [the identified police officers'] assigned duties." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535–36 (S.D. Tex. 2020) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Because Plaintiffs

have not "identified a specific training program or shown how it is inadequate," their failure to train claim fails. *See id.* at 536; *Ratliff*, 948 F.3d at 285 (the allegation that "'a deficiency in training actually caused [the defendants] to violate [the plaintiff's] constitutional rights' ... does not state a claim for relief and warrants dismissal under Rule 12(b)(6)"); *Winegarner v. City of Irving Texas*, No. 24-2171, 2025 WL 2608241, at *5 (N.D. Tex. Aug. 20, 2025), re*port and recommendation adopted*, No. 24-2171, 2025 WL 2606991 (N.D. Tex. Sept. 8, 2025).

Even if Plaintiffs had adequately described a specific training deficiency, their allegations lack any "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, [or] the involvement of multiple officials in the misconduct…." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843–44 (S.D. Tex. 2011). Indeed, their claims fail because they have not alleged the pattern of misconduct necessary to sustain their claim. At the motion to dismiss stage, "[i]t is … clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 582) (citations omitted). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). Instead of alleging a pattern of abuses, Plaintiffs identify only Mr. Cole's injuries and the events giving rise to such injuries. That single incident, absent other prior incidents demonstrating a widespread practice of inadequate training or supervision, is insufficient to establish governmental liability

under *Monell*. *See Guillot*, 59 F.4th at 752–53 (holding that the plaintiff's reliance on two separate violations, or "one-off actions," was insufficient to show a widespread custom under *Monell*).

Further, deliberate indifference—a demanding standard—requires a plaintiff to "demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). And "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (citation modified). The Fifth Circuit recognizes an extremely narrow single-incident exception, requiring a plaintiff to show "that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Valle*, 613 F.3d at 549. Typically, that showing requires allegations that the officers involved received "no training whatsoever." *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 483 (5th Cir. 2021) (quoting *Peña*, 879 F.3d at 624).

Plaintiffs allege neither a pattern of similar violations by *other* officers nor facts sufficient to invoke the single-incident exception. *See Jordan v. Brumfield*, 687 F. App'x 408, 416–17 (5th Cir. 2017); *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 821 (W.D. Tex. 2007). Nor do Plaintiffs allege that any officer—even Deputy Russell—received no training whatsoever. Thus, the single-incident exception does not apply.

*See Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 131–32 (5th Cir. 2022); *see also Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491 (W.D. Tex. 2025) ("[A]lleging a failure to properly train is not the same as alleging a complete failure to train, as the single-incident exception requires.") (citation modified). Plaintiffs therefore have not pleaded facts sufficient to establish deliberate indifference, resulting in dismissal of their failure to supervise and train claims under *Monell*.

*2. Failure to Intervene*

Plaintiffs allege that "Deputy Russell failed to alert other corrections officers of the need to intervene to protect the life of [Mr.] Cole, despite the fact that the beating was clearly visible on" video. *See* R. Doc. 1 at ¶ 20. Based on the Complaint, Plaintiffs appear to plead the failure to intervene claim as part of their failure to supervise claim. *See id.* at ¶ 21. But even if Plaintiffs intend to assert failure to intervene as a separate *Monell* theory, the claim fails.

A failure to intervene claim ordinarily concerns an individual officer's liability under § 1983. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (explaining that "an officer may be liable under § 1983 under a theory of bystander liability"). To the extent Plaintiffs seek to impose municipal liability based on a failure to intervene policy or practice, however, the claim fails for the same reasons as their failure to supervise and train claims. Plaintiffs identify no policy or custom of failing to intervene, allege no pattern of similar incidents, and plead no facts establishing deliberate indifference. Accordingly, Plaintiffs' failure to intervene claim fails to state

a plausible claim for municipal liability under *Monell*. *See Bonner v. City of Shreveport*, No. 25-1530, 2026 WL 267606, at *3 (W.D. La. Feb. 2, 2026).

*3. Failure to Classify or Monitor*

Defendants also assert that Plaintiffs' failure to classify claim lacks sufficient factual allegations. *See* R. Doc. 7-1 at 19–20. But the factual allegations pertaining to a failure to classify claim are treated "as supporting the seriousness of risk and the deliberateness of indifference, and not necessarily underlying a separate claim for failure to classify." *See Hines v. Breland*, No. 06-562, 2007 WL 4104932, at *3 (E.D. La. Nov. 14, 2007). Therefore, we will not address a separate failure to classify claim.

"Prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners ...." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "An inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety." *Id.* at 834. "An official is deliberately indifferent when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As to the failure to monitor claim, Plaintiffs allege that Sheriff Mashaw failed to implement a policy for monitoring prisoners at OCC, which led to Mr. Cole's injuries. *See* R. Doc. 10 at 5. But these allegations merely describe what occurred on October 24, 2024, rather than a persistent and widespread practice of failing to monitor prisoners. "[P]lausibly to plead a practice 'so persistent and widespread as to

practically have the force of law,' [Plaintiffs] must do more than describe the incident that gave rise to [Mr. Cole's] injur[ies]." *Ratliff*, 948 F.3d at 285 (citing *Peña*, 879 F.3d at 622); *see also Peterson*, 588 F.3d at 850–51 (explaining that a pattern "requires similarity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question").

Plaintiffs identify no other incidents involving inadequate monitoring, much less a pattern of similar constitutional violations. Because Plaintiffs rely solely on Mr. Cole's injuries and the purported failure to monitor him on October 24, 2024, the Complaint does not plausibly establish a policy or custom necessary for a *Monell* claim. *See id.*; *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021) (citing *Piotrowski*, 237 F.3d at 581); *Walker v. Pohlmann*, No. 20-3464, 2021 WL 2579803, at *10 (E.D. La. June 23, 2021).

*4. Failure to Provide Medical Care*

Plaintiffs claim that Defendants, who were responsible for providing Mr. Cole access to reasonable medical care, ignored his medical needs and "took no steps at all to further assess or provide access to treatment for his medical condition following his initial visit to medical." *See* R. Doc. 1 at ¶¶ 29–31. According to Plaintiffs, Mr. Cole's "condition worsened" in the weeks following October 24, 2024. *See id.* at ¶ 31. Plaintiffs therefore allege that "Defendants acted with deliberate indifference to Mr. Cole's health, despite knowing that he faced a substantial risk of serious harm, by disregarding that risk and failing to take reasonable measures to abate it." *See id.* at ¶ 32.

These allegations, however, concern only the alleged acts or omissions of Defendants' employees in connection with Mr. Cole's medical care. And municipalities, under *Monell*, cannot be held liable under a theory of respondeat superior or vicarious liability. *See Zarnow*, 614 F.3d at 167 ("The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a respondeat superior analysis."). Instead, Plaintiffs must identify a policy—either an officially adopted policy or a widespread custom—that caused Mr. Cole's injuries. *See Thompson*, 2026 WL 2069890, at *10. Plaintiffs have not done so. They identify no policy governing the provision of medical care at OCC, no widespread practice of denying or delaying medical care, and no other incidents demonstrating such a practice. Accordingly, Plaintiffs have not plausibly alleged a municipal policy or custom of failing to provide medical care, and their failure to provide medical care claim must be dismissed. *See Kador o/b/o Willis v. Gautreaux*, No. 23-11, 2024 WL 1261897, at *22 (M.D. La. Mar. 25, 2024) (dismissing complaint for lack of allegations concerning defendant's widespread practice regarding the provision of medical care); *Rodgers on Behalf of CJTJ v. Gusman*, No. 16-16303, 2019 WL 1903550, at **7–8 (E.D. La. Apr. 29, 2019) (same).

And even if Plaintiffs alleged an adequate widespread custom, the factual allegations here are far from enough to show that Mr. Cole was denied medical care. To state a claim for failure to provide medical care, a plaintiff must allege "that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir.

2000). To establish deliberate indifference, a plaintiff must show that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

After Mr. Cole sustained injuries, he was "cleared" by medical personnel. *See id.* at ¶ 12. According to Plaintiffs, Mr. Cole, despite being medically cleared, remained "manifestly ill." *See id.* However, "[Plaintiffs] fail[] to allege any facts to support the allegation that [Mr. Cole] was denied medical care for a serious medical need and that these Defendants were deliberately indifferent to that need." *Brown v. Waybourn*, 764 F. Supp. 3d 466, 472 (N.D. Tex. 2025). Accordingly, Plaintiffs have failed to state a plausible failure to provide medical care claim. *See Domino*, 239 F.3d at 756.

## II. Individual Capacity Claims

### A. Sheriff Mashaw

As for Sheriff Mashaw, Plaintiffs seek to extend supervisory liability to him in his individual capacity. *See generally* R. Doc. 1. Plaintiffs allege that Sheriff Mashaw is responsible for the constitutional violations that occur at OCC. *See id.* at 3. Sheriff Mashaw argues that Plaintiffs fail to state a claim for supervisory liability and, in any event, is entitled to qualified immunity. *See* R. Doc. 7-1 at 15, 21–23.

Remember, to defeat qualified immunity, Plaintiffs must allege facts that plausibly show Sheriff Mashaw's conduct violated a constitutional right and the

constitutional right was clearly established at the time of the alleged misconduct. *See Harmon*, 16 F.4th at 1163 (citing *Pearson*, 555 U.S. at 232).[4] Here, Plaintiffs fail to plead facts showing Sheriff Mashaw violated Mr. Cole's constitutional rights.

Sheriff Mashaw's liability rests on whether "(1) he affirmatively participate[d] in the acts that cause[d] the constitutional deprivation, or (2) he implement[ed] unconstitutional policies that causally result[ed] in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation modified). Not only must Plaintiffs allege "that the[ir] claims rested on policies implemented by [Sheriff Mashaw,] … their supervisory claims 'must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'" *Guidry v. Louisiana Dep't of Pub. Safety*, No. 24-30754, 2026 WL 687932, at *3 (5th Cir. Mar. 11, 2026) (quoting *Ford v. Anderson County*, 102 F.4th 292, 321 (5th Cir. 2024)). Deliberate indifference, in this context, typically requires a showing that the supervisor knew about a pattern of similar violations. S*ee Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006).

Remember, for a denial of medical care claim, a plaintiff must allege "that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner,* 227 F.3d at 324. "Deliberate indifference is an extremely high standard to meet," and a "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly,

[4] We must note that as for qualified immunity, Plaintiffs only contend that Defendants were deliberately indifferent to Mr. Cole's medical needs. *See* R. Doc. 10 at 10. Therefore, as far as we interpret the opposition, Plaintiffs only contest qualified immunity as to the failure to provide medical care claim.

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino,* 239 F.3d at 756 (quoting *Johnson,* 759 F.2d at 1238). "[I]n order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm." *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993). Under this standard, a state actor may not be held liable under § 1983 unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Plaintiffs do not allege that Sheriff Mashaw personally participated in the events at OCC. *See generally* R. Doc. 1. Rather, Plaintiffs allege failure to implement policy, failure to supervise, failure to train, failure to classify, and failure to provide medical care claims against Sheriff Mashaw. *See id.* at ¶¶ 19–33. For essentially the same reasons discussed with respect to Plaintiffs' *Monell* claims, these allegations are insufficient to state a claim. *See Rios*, 444 F.3d at 426 ("[The Fifth Circuit has] held that [it] 'use[s] the same standard in assessing an individual supervisor's liability under § 1983' as that used 'in assessing a municipality's liability' thereunder.") (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)). That is, the facts as alleged do not support the inference that a custom or policy existed. *See Venzor*, 2022 WL 666989, at *9.

Further, while Plaintiffs allege generally that Sheriff Mashaw acted with deliberate indifference, Plaintiffs do not allege specific facts showing that Sheriff

Mashaw acted with deliberate indifference, as required. *See Calhoun*, 855 F. App'x at 922 (dismissing § 1983 claims against the police chief because the plaintiff failed to provide facts indicating the police chief acted with deliberate indifference).

Plaintiffs' allegations do not show that Sheriff Mashaw's actions, or inactions, were objectively unreasonable under clearly established law. Plaintiffs rely on *Humes v. Jones*, 109 F.4th 1112 (8th Cir. 2024). The Eighth Circuit, in *Humes*, held the following: "The clearly established principle from *Dadd* [*v. Anoka County*, 827 F.3d 749 (8th Cir. 2016)] is that a complete failure to treat an extremely painful (or other serious) condition displays a reckless indifference to a serious medical need." *See Humes*, 109 F.4th at 1117 (quoting *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 363 (8th Cir. 2023)). Initially, "[i]n determining what constitutes clearly established law, [courts in the Fifth Circuit] first look[] to Supreme Court precedent and then to [Fifth Circuit precedent]. If there is no directly controlling authority, … court[s] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018), *as revised* (Sept. 25, 2018) (quotations and citations omitted). The Fifth Circuit precedent on this issue is not hard to find.[5]

Nevertheless, Mr. Cole's right to medical care is clearly established. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). But, even if Sheriff Mashaw violated Mr. Cole's constitutional

---

[5] *See, e.g.*, *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006) (addressing qualified immunity in the context of a prison official's alleged denial of medical care at the motion-to-dismiss stage); *Stapleton v. Lozano*, 125 F.4th 743, 748–53 (5th Cir. 2025) (same); *Jordan*, 593 F. Supp. 3d at 361–67 (collecting cases).

rights, the Eighth Circuit cases relied upon lack similar facts where a policymaker under similar circumstances with no personal involvement as Sheriff Mashaw was found liable for the failure to provide medical care or any other claims for that matter. *See Jordan*, 593 F. Supp. 3d at 367 (dismissing individual capacity claims based on supervisor liability for lack of clearly established law with a high degree of particularity). Plaintiffs therefore fail to overcome Sheriff Mashaw's entitlement to qualified immunity, resulting in dismissal of their claims against him.

Further, Plaintiffs fail to identify any officer who allegedly violated Mr. Cole's constitutional rights after October 24, 2024. *Culotta v. Lafayette Consol. Gov't*, No. 17-93, 2017 WL 5586757, at *7 (W.D. La. Oct. 19, 2017), *report and recommendation adopted*, No. 17-93, 2017 WL 5560161 (W.D. La. Nov. 17, 2017).

**B. Warden Jenkins**

We find that Plaintiffs have failed to state a claim against Warden Jenkins in his individual capacity. We need not reiterate the analysis and reasoning set forth previously regarding Plaintiffs' individual capacity claim against Sheriff Mashaw, which applies equally to Warden Jenkins. We note, however, that Plaintiffs allege no personal involvement by Warden Jenkins and plead no facts plausibly showing deliberate indifference. *See Rodriguez v. Putnam*, No. 23-4026, 2024 WL 2159970, at *7 (S.D. Tex. May 14, 2024) (dismissing complaint with insufficient factual allegations showing that warden acted with deliberate indifference or failed to take reasonable steps to protect defendant). Indeed, as reflected in Plaintiffs' opposition, the allegations against Warden Jenkins are more lacking than those against Sheriff

Mashaw. Accordingly, because Warden Jenkins has asserted qualified immunity and because we find Plaintiffs have not adequately opposed it, we find that Warden Jenkins is entitled to qualified immunity. *See ante*. The individual capacity claims against Warden Jenkins are dismissed.

**C. Deputy Russell**

Based on the Complaint, Deputy Russell is the only defendant who Plaintiffs allege personal involvement. Plaintiffs allege that, on October 24, 2024, Deputy Russell was monitoring B Dorm while Mr. Cole was beaten by Mr. Taylor. *See id.* at ¶¶ 9–10. Thereafter, Mr. Cole was "cleared" by medical personnel. *See id.* at ¶ 12. According to Plaintiffs, Mr. Cole, despite being medically cleared, remained "manifestly ill." *See id.* No further facts are alleged until November 19, 2024, when an unnamed person contacted Mr. Jackson regarding Mr. Cole's health. *See id.* at ¶¶ 12–14. On November 20, 2024, Mr. Cole passed out, and EMS later began cardiopulmonary resuscitation and transported him to Ochsner. *See id.* at ¶ 15.

These facts, however, do not raise a plausible federal claim against Deputy Russell. As Defendants point out, *see* R. Doc. 7-1 at 20, these allegations lack any showing that Deputy Russell knew that Mr. Taylor would attack Mr. Cole but disregarded such, nor do they allege that Deputy Russell observed the incident but took no action. Rather, Plaintiffs only allege that other inmates interrupted the incident while Deputy Russell monitored the dormitory. *See* R. Doc. 1 at ¶ 10. Insofar as Plaintiffs attempt to hold Deputy Russell liable for failure to provide medical care, they have not alleged facts regarding Mr. Cole's actual medical condition, how he was

manifestly ill, that Mr. Cole ever complained to the OCC of his health, or—most importantly—that Deputy Russell knew of or was involved in any way. Therefore, the Complaint does not support a reasonable inference that Deputy Russell violated a constitutional right of Mr. Cole. *See Brown*, 764 F. Supp. 3d at 473.

In sum, "the alleged failure to provide medical care and access to medical care boil down to one single allegedly unlawful condition attributable to [Deputy Russell]: the failure to properly monitor. But even this is insufficient to impose liability, as [Plaintiffs] fail[] to demonstrate how this … caused [Mr. Cole's] harm." *See Jordan*, 593 F. Supp. 3d at 363. Further, we find Deputy Russell to be entitled to qualified immunity to the same extent as Sheriff Mashaw and Warden Jenkins. *See ante* at 19–24. Accordingly, the individual capacity claims against Deputy Russell are dismissed.

**III. State Law Claims**

Because we have determined that all of Plaintiffs' federal law claims against Defendants fail as a matter of law, only state law claims remain. And Defendants ask us to decline to exercise supplemental jurisdiction over those claims. *See* R. Doc. 7-1 at 23–24.

Pursuant to 28 U.S.C. § 1367(c), we may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances,

there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). In making this determination, we are guided by the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity. *Mendoza v. Murphy,* 532 F.3d 342, 346 (5th Cir.2008) (citations omitted).

In the Fifth Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Sahlein v. Red Oak Capital, Inc.*, 2015 WL 736340, *2 (N.D. Miss. Feb. 20, 2015) (citations omitted) ("[T]he Fifth Circuit has stated that its general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.").

Here, all federal claims are dismissed. This case has been pending for less than a year, we have not issued a scheduling order, and the docket reflects no substantive activity beyond the filing of the Complaint, certificates of service, and the parties' memoranda concerning the instant motion. Thus, considerations of judicial economy, convenience, fairness, and comity do not weigh in favor of retaining the state law claims. *See Pennie v. Obama*, 255 F. Supp. 3d 648, 671–73 (N.D. Tex. 2017). We therefore decline to exercise supplemental jurisdiction over those claims.

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Defendants' Motion to Dismiss (R. Doc. 7) is **GRANTED**, and all federal law claims asserted against Defendants are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' state law claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers this 29th day of September, 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**